# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 14-0067-WS-C |
| ) | |
| **REGIONS BANK,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

This matter comes before the Court on defendant's Renewed Motion to Dismiss (doc. 54). The Motion has been extensively briefed and is now ripe for disposition.

**I.  Background.**

Plaintiff, Allstate Insurance Company, filed suit against defendant, Regions Bank, in the U.S. District Court for the Northern District of Illinois on July 18, 2013. The Complaint purported to assert three state-law claims sounding in theories of fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment / suppression.[1]

According to the well-pleaded factual allegations of the Complaint,[2] this dispute arises from the parties' respective activities in financing a failed real estate project known as the Town of Saltaire, on the western shore of Mobile Bay. In February 2006, the project's developer

---

[1]  Federal subject matter jurisdiction was properly predicated on the provisions of 28 U.S.C. § 1332, inasmuch as Allstate and Regions are of diverse citizenship and the amount in controversy greatly exceeds the $75,000 jurisdictional threshold.

[2]  For purposes of its Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Complaint, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). Of course, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

formed an entity called Mobile Bay Investments, LLC ("MBI") to facilitate financing and promotion of Saltaire. (Doc. 1, ¶ 7.) Between December 2006 and December 2007, defendant, Regions Bank, loaned a total of $6.5 million to MBI. (*Id.*, ¶ 9.)

In addition to this Regions funding, MBI caused to be established the Belle Fontaine Improvement District, a quasi-public entity that issued tax-free bonds to finance Saltaire's infrastructure. (*Id.*, ¶ 10-12.) In December 2007, plaintiff, Allstate Insurance Company, made arrangements to purchase $12.3 million in Saltaire infrastructure bonds. (*Id.*, ¶ 13.) As part and parcel of that endeavor, Allstate entered into a so-called "Side Agreement" with the developer, pursuant to which Allstate imposed certain binding restrictions on the release of bond proceeds. (*Id.*) Specifically, the Side Agreement described Regions as controlling a $14.5 million line of credit in favor of Saltaire, and prohibited the release of more than $1 million of the $12.3 million in Allstate bond proceeds until such time as Regions reached a $16 million commitment to Saltaire. (*Id.*, ¶ 14.) In accordance with those restrictions, the bond trustee released just $1 million in bond proceeds to Saltaire after the bond closing in December 2007. (*Id.*, ¶ 15.)

Regions was not a party to the Side Agreement; however, as of January 2008, it was aware of the $16 million Regions funding threshold imposed by Allstate as a condition precedent to the release of the other $11.3 million in bond proceeds. (*Id.*, ¶ 14.) Also, even though Regions had never in fact funded a $14.5 million line of credit in Saltaire's favor, "Regions knew that Allstate mistakenly believed that it had." (*Id.*, ¶ 14 n.1.) For its part, Regions was unwilling to "fully commit to the project until there had been a release of *all* the bond proceeds." (*Id.*, ¶ 17.) There was thus a funding stalemate between Regions and Allstate, with neither willing to commit more funds until the other one did so. Adding an element of urgency to the situation, Regions knew that the Saltaire project was in financial peril, with contractors threatening to walk off the job because they had not been paid. (*Id.*) To keep the project afloat without committing more funds itself, Regions sought to cause the release of all of Allstate's bond proceeds. To that end, the Complaint alleges, Regions hatched a fraudulent scheme pursuant to which "Regions issued a bogus $2 million commitment letter in favor of MBI on January 30, 3008, the sole purpose of which was to convince Allstate and the Bond Trustee that Regions had now reached a $16 million commitment to Saltaire." (*Id.*, ¶ 19.) That commitment letter was ultimately presented to the Bond Trustee and Allstate, prompting Allstate to authorize release of the remaining $11.3 million in bond proceeds. (*Id.*, ¶¶ 19-20.) In keeping with its deceptive

intention from the outset, the Complaint alleges, Regions never funded the $2 million commitment specified in the letter. (*Id.*, ¶ 20.) Allstate alleges that if it had "known that the $2 million commitment was a sham and that Regions was not even close to satisfying the $16 million commitment, Allstate would have collapsed the bond issue [and] directed the Bond Trustee to return the $11.3 million." (*Id.*) Instead, Regions tricked Allstate into releasing the bond proceeds, then walked away from the project, leaving Allstate holding the bag. "Saltaire failed and Allstate has lost millions of dollars." (*Id.*, ¶ 21.)

On the strength of these well-pleaded factual allegations (which are accepted as true for purposes of Rule 12(b)(6) review), Allstate brings three fraud-related claims against Regions. Count One sounds in a theory of fraudulent representation, alleging that Regions falsely represented in the January 2008 letter that it was obligated to lend an additional $2 million to MBI, that Regions made this misrepresentation "with the intention of inducing Allstate to authorize the release of $11.3 million in bond proceeds," and that Allstate relied to its detriment on the false representation by authorizing the Bond Trustee to release the bond proceeds. (*Id.*, ¶¶ 23-27.) Count Two alleges negligent misrepresentation, based on precisely the same facts and circumstances as Count One, with the only difference being an allegation that Regions was careless or negligent in making the false representation, rather than doing so with knowledge of its falsity. Finally, Count Three is a claim of fraudulent concealment/suppression. That cause of action alleges that "Regions concealed from Allstate that it had not funded a $14.5 million acquisition and development loan or line of credit to Saltaire in December of 2007," even though Regions knew that Allstate believed it had funded such a loan or line of credit. (*Id.*, ¶¶ 35-36.) The Complaint alleges that "Allstate could not have discovered the truth through reasonable inquiry or inspection" (*id.*, ¶ 40), and that the concealed information was such that Allstate would have acted differently had it known the truth.

As noted *supra*, Allstate initially filed the Complaint in the Northern District of Illinois. On February 14, 2014, the Illinois Court entered an Opinion and Order (doc. 40) transferring the case to this District Court. In so doing, the Illinois Court rejected Regions' request for transfer for improper venue pursuant to 28 U.S.C. § 1406.[3] Nonetheless, transfer was ordered for

---

[3] On that point, the Illinois Court reasoned as follows: "Because a substantial part of the events giving rise to Allstate's claim took place in the Northern District of Illinois, venue (Continued)

-3-

convenience of the parties and witnesses, in the interest of justice, pursuant to 28 U.S.C. § 1404(a).[4]  After this District Court received the transfer, Regions renewed its previously filed Motion to Dismiss, which had been denied as moot by the Illinois Court contemporaneously with the transfer.  In summary, Regions argues that the Complaint must be dismissed under Rule 12(b)(6), Fed.R.Civ.P., because (i) it is inadequate to satisfy Allstate's pleading obligations under the *Twombly / Iqbal* line of authorities and Rule 9(b), Fed.R.Civ.P.; and (ii) it is untimely.

## II.     Sufficiency of Pleading under *Twombly* and Rule 9(b).

### A.     *Legal Standard.*

To withstand Rule 12(b)(6) scrutiny and satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim."  *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level."  *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).  "To survive a

---

is proper here pursuant to 28 U.S.C. § 1391(b)(2) and transfer pursuant to § 1406 is not appropriate."  (Doc. 40, at 5.)

    [4]     In a footnote in its principal brief, Regions suggests that the Illinois Court should have transferred this action under § 1406, rather than § 1404(a), and insinuates that this Court might "need to rule on the correct transfer statute" (doc. 55, at 6 n.4) in order to determine which state's law applies.  This Court is skeptical of any invitation to revisit the Illinois Court's § 1406 and § 1404(a) analyses anew in this case, much less to rule many months after the fact that transfer will be deemed to have occurred under a statute other than that expressly identified by the transferor court as the basis for its decision.

12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

### B. *Misrepresentation Claims (Counts One and Two).*

With respect to Counts One (fraudulent misrepresentation) and Two (negligent representation), Regions maintains that Allstate's Complaint flunks basic pleading requirements because it "complete[ly] fail[s] to allege that Regions made a false statement." (Doc. 54, at 2.) This argument overlooks clear allegations of the Complaint, to-wit: "Regions falsely represented, through its January 30, 2008 commitment letter, that it was obligated to lend an additional $2 million to MBI …." (Doc. 1, ¶¶ 23, 29.)[5] Thus, Counts One and Two unequivocally identify

---

[5] In its reply brief, Regions sharply criticizes Allstate for using ellipses in quoting this passage from the Complaint, just as this Court has done. (Doc. 63, at 9-10.) This is much ado about nothing. The complete sentence found in each of Counts One and Two reads as follows: "Regions falsely represented, through its January 30, 2008 commitment letter, that it was obligated to lend an additional $2 million to MBI, purportedly raising its total commitment to Saltaire to $16.5 million." (Doc. 1, ¶¶ 23, 29.) Regions maintains that "Allstate attempts to disguise its allegations" by neglecting to cite the "purportedly raising" clause in its brief. (Doc. 63, at 10.) Not so. By the plain terms of the Complaint, the false representation was that Regions stated in the commitment letter that it was committing to lend MBI another $2 million. The Complaint cannot be fairly read as alleging that Regions made a false representation as to an underlying $14.5 million commitment; rather, the $2 million commitment letter is alleged to be the false statement which, placed in the context of what Regions knew to be Allstate's erroneous understanding that Regions had already committed $14.5 million to the project, defrauded Allstate into authorizing release of the bond proceeds. Allstate's alleged "mistaken belief" on the underlying $14.5 million is not alleged in the Complaint to be the product of a fraudulent or negligent misrepresentation by Regions giving rise to Counts One and Two; rather, it is alleged to be a background fact that Regions knew and exploited via the $2 million commitment letter, which was the alleged false representation. In plain English, Counts One and Two plead that Regions knew Allstate was mistaken in its understanding of how much money Regions had lent to Saltaire, so Regions took advantage of and manipulated that misunderstanding by concocting a fraudulent scheme to tell a lie that it knew would prompt Allstate (given its existing mistake of fact about the committed funds) to release the bond proceeds. Allstate does not have to show that the underlying misunderstanding was any fault or responsibility of Regions to prevail on Counts One and Two because, again, the misrepresentation on which those counts rest is strictly confined to the $2 million commitment letter. Accordingly, Regions' extensive arguments in its briefs that it did not make affirmative misrepresentations about a $14.5 million underlying commitment are not probative in a Rule 12(b)(6) analysis as to Counts One and Two, because (i) Allstate does not claim otherwise and (ii) the specific targeted misrepresentation on which
(Continued)

what Allstate claims to be a specific false representation by Regions, and have provided information as to the date of the alleged false representation, the document in which it was contained, the content of the purportedly false statement, the nefarious purpose of the alleged misrepresentation, the manner in which that false statement misled and harmed Allstate, and the ill-gotten benefit to Regions. Neither *Twombly* nor Rule 9(b) requires more. *See, e.g., FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (explaining that Rule 9(b) requires a plaintiff to plead "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making … them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud").

In a footnote in its reply brief, Regions directly addresses the false representation allegations of the Complaint, as opposed to other claims not advanced in Counts One and Two. Regions insists that its "obligations under the commitment letter … were not false." (Doc. 63, at 11-12 n.9.) That, however, is a question of fact ill-suited for resolution at the Rule 12(b)(6) stage. The well-pleaded allegations of the Complaint are that the January 30, 2008 commitment letter was "bogus" and a "sham," that its "sole purpose … was to convince Allstate and the Bond Trustee that Regions had now reached a $16 million commitment to Saltaire," and that Regions "had no intention of funding the $2 million commitment letter" at any time. (Doc. 1, ¶¶ 19, 20, 38.) As pleaded on the face of the Complaint, the January 30 commitment letter was a false representation designed not for any legitimate funding purpose, but to trick Allstate, which it did. Regions may vigorously dispute those factual allegations. It will have a full opportunity to do so later in this litigation, but not now. For 12(b)(6) purposes, those allegations are accepted as true and, viewed through that procedural prism, are adequate to state claims of fraudulent and negligent misrepresentation against Regions.

### C. *Fraudulent Concealment Claim (Count Three).*

As noted, Count Three of the Complaint is a state-law cause of action for fraudulent concealment / suppression, rooted in the allegation that "Regions concealed from Allstate that it

---

Counts One and Two rest is distinct from the $14.5 million commitment misunderstanding that Regions' alleged misrepresentation was designed to exploit to Allstate's detriment and Regions' gain.

had not funded a $14.5 million acquisition and development loan or line of credit to Saltaire in December of 2007." (Doc. 1, ¶ 35.) According to the Complaint, Regions did so as a means of deceiving Allstate into thinking that the January 30, 2008 commitment letter raised Regions' total commitment to Saltaire to an amount exceeding $16 million. (*Id.*, ¶ 38.) The Complaint further alleges, without elaboration, that "Regions had a duty to speak the truth about the scope of its lending relationship with Saltaire." (*Id.*, ¶ 39.)

That last allegation lies at the heart of Regions' Rule 12(b)(6) Motion as it relates to Count Three. In particular, Regions argues that Allstate's fraudulent concealment claim does not satisfy minimum pleading standards "because Allstate does not allege facts that could demonstrate that Regions owed Allstate a duty of disclosure." (Doc. 55, at 9.) Under both Alabama and Illinois law, a fraudulent concealment claim is not actionable absent a duty to disclose. *See, e.g., Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So.2d 883, 891 (Ala. 2005) ("It is evident from a reading of the statute and the caselaw that, without a duty to disclose, there can be no recovery for suppression."); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (applying Illinois law and explaining that "a claim of fraudulent concealment or fraud-by-nondisclosure … requires a duty to disclose on the part of a defendant").[6]

---

[6] For purposes of its Rule 12(b)(6) Motion, Regions does not present any meaningful choice-of-law analysis or stake itself to any particular position as to whether Alabama law or Illinois law governs. Instead, Regions cites both states' laws and asserts that "this Court need not rule on which substantive law applies because Allstate's allegations fail to state a claim under either Alabama or Illinois substantive law." (Doc. 55, at 7 n.5.) This approach is problematic, inasmuch as Regions' filings rely heavily on particular legal propositions from one state that may not have an analog in the other state's jurisprudence. Indeed, both parties' briefs have tried to take advantage of perceived points in their favor in one state's case law that may not be duplicated in the other's. Nonetheless, Regions argues that the result is identical under both states' laws. The Court will play the Motion as it lies and will not embark *sua sponte* on a choice-of-law analysis that the parties have omitted. In the interests of efficiency and to avoid confusion in future motions, however, the parties are strongly encouraged either to reach a stipulation as to which state's substantive law governs or to submit a cogent legal analysis on the subject, so as to obviate the need for these sorts of dual-tracked "Alabama law says X, but Illinois law says Y" contortions. What's more, by splitting their attention between Alabama and Illinois law, the parties have undermined their own ability to engage in a comprehensive doctrinal analysis of either state's law; instead, they opportunistically cherry pick a stray phrase here or an out-of-context clause there. Future resources might be better deployed
(Continued)

The weakness in Regions' argument is that it assumes a rigidity to the "duty to disclose" element that is not borne out by the case law. To be sure, Regions is correct that Allstate has not pleaded (and, indeed, appears to have disclaimed) the existence of a confidential or fiduciary relationship between the parties. Regions also accurately characterizes the law by maintaining that a party's silence alone does not give rise to a duty to disclose, and that no duty to disclose lies if the defendant provides documents to the plaintiff placing the latter on notice of the purportedly suppressed facts. But Alabama law requires a flexible totality-of-the-circumstances analysis to assess whether a duty to disclose exists.[7] Allstate's Complaint sets forth sufficiently detailed allegations regarding the parties' relative knowledge, the critical value of the suppressed fact, Allstate's inability to ascertain that fact, and Regions' intentionally deceptive conduct to exploit the suppressed fact, so as to state a plausible claim for fraudulent concealment. Furthermore, Illinois courts have expressly recognized that, while mere silence does not amount to fraud, "Silence accompanied by deceptive conduct or suppression of material facts, however, can give rise to concealment and it is then the duty of the party which has concealed information

---

by determining which state's law governs, then crafting an argument grounded in a meaningful discussion of that jurisdiction's authorities delving beyond the superficial.

[7]   *See, e.g., Nationwide Mut. Fire Ins. Co. v. Guster Law Firm, LLC*, 944 F. Supp.2d 1116, 1126 (N.D. Ala. 2013) ("[W]hether a duty to disclose arises in the particular circumstances of a case depends on the relationship of the parties, the value of a particular fact, the relative knowledge of the parties and other circumstances.") (citations omitted); *Cochran v. Five Points Temporaries, LLC*, 907 F. Supp.2d 1260, 1278 (N.D. Ala. 2012) ("This analysis is made on a 'case-by-case' basis and is flexibly applied."); *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2d 665, 677 (Ala. 2001) ("The trial court must consider and apply the following factors in determining whether, under the particular circumstances, a duty to disclose exists: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.") (citation omitted); *Liberty Nat. Life Ins. Co. v. McAllister*, 675 So.2d 1292, 1296 (Ala. 1995) ("when one party has superior knowledge of a fact that is unknown to the other party, and the lack of knowledge will induce the other party to act in a manner in which he otherwise might not act, the obligation to disclose is particularly compelling") (citation omitted); *Doss v. Serra Chevrolet, Inc.*, 781 So.2d 973, 976 (Ala.Civ.App. 2000) ("in an action alleging suppression of a material fact, a duty to disclose may be owed to a person with whom one has not had a contractual relationship or other dealings") (citation omitted).

to speak." *Hirsch v. Feuer*, 702 N.E.2d 265, 273 (Ill. App. 1 Dist. 1998).[8] That is precisely what the Complaint pleads occurred here.

More fundamentally, Regions' argument fails because it appears to be engaging in a summary-judgment type analysis at the motion-to-dismiss stage. Movants' briefs are rife with allegations such as the following: (i) "Allstate knew … that Regions had not extended a $15 million (or $14.5 million) 'line of credit' to the Developer" (doc. 55, at 3); (ii) "the recorded mortgages alone were sufficient to provide Allstate with notice" (*id.* at 12); (iii) "the Subordination Agreements would have erased any doubt that Allstate might have had" (*id.*); (iv) "neither Allstate nor its counsel bothered to confirm publicly-available information" (doc. 55, at 13); (v) "Allstate could have simply requested documentation showing Regions' outstanding commitments to SaltAire from any of the numerous parties that Allstate was dealing with" (doc. 63, at 6); and (vi) "Allstate failed to take even the most basic steps to discover whether its 'mistaken belief' about Regions' financing was true" (*id.*). All of these purported "facts" lie outside the pleadings and therefore cannot be credited in support of defendants' Rule 12(b)(6) Motion.[9] The Court has no way of knowing, at this preliminary juncture, what Allstate did or did

---

[8] *See also Henderson Square Condominium Ass'n v. LAB Townhomes, L.L.C.*, --- N.E.3d ----, 2014 WL 1158948, *17 (Ill. App. 1 Dist. Mar. 21, 2014) ("silence combined with deceptive conduct or the suppression of material facts results in active concealment, and then the [defendant] has a duty to speak"); *FE Digital Investments, Ltd. v. Hale*, 499 F. Supp.2d 1054, 1061 (N.D. Ill. 2007) (under Illinois law, "while mere silence in a business transaction does not amount to fraud, a party's duty to speak is triggered when the party's silence is accompanied by deceptive conduct or suppression of material facts resulting in an active deception") (citation and internal marks omitted).

[9] The Court concurs with defendant's position that certain documents outside the pleadings are properly considered on the Motion to Dismiss because they are central to plaintiff's claims, while others are fair game because they are public record. *See generally Starship Enterprises of Atlanta, Inc. v. Coweta County, Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013) ("Although analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto, a court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim."); *Chinn v. PNC Bank, N.A.*, 2012 WL 89940, *1 n.1 (11th Cir. Jan. 12, 2012) ("A district court may take judicial notice of facts capable of accurate and ready determination by using sources whose accuracy cannot reasonably be questioned, including public records."). The problem is not Regions' reliance on these materials, but Regions' appeal for this Court to draw factual inferences from them in the light most favorable to Regions (*i.e.*, that any reasonable entity in Allstate's position would have examined those documents, that Allstate did not in fact examine those documents, (Continued)

not do to attempt to ascertain the truth, what inquiries Allstate might have made and what information those inquiries might have divulged, or whether the public-record documents that Regions references would have placed any reasonable person on notice of the truth. These inordinately fact-bound matters require development via discovery and, if appropriate, further briefing at the summary judgment stage. The Court cannot and will not take liberties with the pleadings by assuming the validity of defendant's *ipse dixit* at the Rule 12(b)(6) stage. Besides, the Complaint expressly alleges that "Allstate could not have discovered the truth through reasonable inquiry or inspection and/or was prevented from making a reasonable inquiry or inspection." (Doc. 1, ¶ 40.)[10] Rule 12(b)(6) dismissal of Count Three is not appropriate on a "no-duty-to-disclose" theory.

### III. Statute of Limitations.

Regions' alternative ground for seeking dismissal under Rule 12(b)(6) is that Allstate's claims are barred by the applicable statute of limitations. Regions identifies both Alabama's two-year limitations period for fraud, Ala. Code § 6-2-38(*l*), and Illinois's corresponding five-year statute of limitations, 735 ILCS 5/13-205, but omits any meaningful analysis or argument as to which limitations period governs. Instead, Regions asserts that "Allstate's claims are facially barred by both the Alabama and Illinois statutes." (Doc. 55, at 4.) As stated *supra*, Regions having chosen to posture its Rule 12(b)(6) Motion in this manner, the Court will not explore choice-of-law issues that movant did not.

Initially, it bears emphasis that a limitations defense, such as that interposed by Regions, is generally poorly suited for resolution via Rule 12(b)(6) Motion. After all, the law is clear that "[a] statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate

---

that any reasonable entity in Allstate's position would have concluded from reviewing those documents that $6.55 million was Regions' total funding commitment, etc.). Those leaps of logic are too vast to be accepted on faith at the Rule 12(b)(6) stage, without prior development of a factual record.

[10] In large part, Regions' Rule 12(b)(6) Motion on this point merely quarrels with the veracity of the Complaint. For example, Regions insists that "Allstate certainly cannot allege that it 'had no opportunity to learn' the true facts." (Doc. 63, at 6.) But that, in effect, is alleged in Paragraph 40 of the Complaint. The time and place for disputing the truth of well-pleaded factual allegations is not a Rule 12(b)(6) Motion.

an affirmative defense in their complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal marks omitted); *see also McMillian v. AMC Mortg. Services, Inc.*, 560 F. Supp.2d 1210, 1213 (S.D. Ala. 2008) ("A statute of limitations defense is generally not appropriate for evaluation on a Motion to Dismiss …, inasmuch as the statute of limitations is an affirmative defense around which plaintiffs are not required to plead in their complaint."); *Doyle v. City of Chicago*, 943 F. Supp.2d 815, 821 (N.D. Ill. 2013) ("A plaintiff's failure to adhere to a statute of limitations is an affirmative defense and therefore generally is not amenable to dismissal at the complaint stage."). "[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); *see also Frame v. City of Arlington*, 657 F.3d 215, 239-40 (5th Cir. 2011) ("Under federal pleading requirements, … a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations."); *Doyle*, 943 F. Supp.2d at 821 ("a complaint need not contain any information about defenses and may not be dismissed for that omission").

That said, "dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Hollander*, 457 F.3d at 691 n.1; *see also Ausikaitis on behalf of Masimo Corporation v. Kiani*, 962 F. Supp.2d 661, 673 (D. Del. 2013) ("the limitations defense may be raised on a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (citation omitted); *Deutsche Bank Trust Co. Americas v. Doral Financial Corp.*, 841 F. Suppp.2d 593, 600 (D.P.R. 2012) ("even though a complaint need not plead facts to avoid potential affirmative defenses, plaintiffs could plead themselves out of court by alleging facts that are sufficient to establish the defense") (citation and internal quotation marks omitted). In other words, "[d]ismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (citations and internal quotation marks omitted).

Regions invokes this basis for dismissal, insisting that "[t]he face of Allstate's complaint shows that its claims are untimely." (Doc. 55, at 14.) Such a contention has superficial allure. After all, Counts One and Two reference false representations in a commitment letter dated

January 30, 2008, more than five years before Allstate filed its Complaint in July 2013. Similarly, Count Three relies on Regions' alleged concealment of its failure to fund a $14.5 million line of credit to Saltaire in December 2007. Looking backwards from the filing of the Complaint, those events certainly occurred outside a 2-year or 5-year window. But both Alabama and Illinois have enacted discovery rules that govern accrual of claims in the fraud context.[11] Under any reasonable reading of the Complaint, Allstate has invoked those discovery rules. For example, Allstate pleads that "Regions concealed from Allstate that it had no intention of funding the $2 million commitment letter" (doc. 1, ¶ 38), which is the very fraud animating Counts One and Two. Allstate also pleads that "Regions concealed from Allstate that it had not funded a $14.5 million acquisition and development loan" (*id.*, ¶ 35), which is the very fraud animating Count Three. Allstate pleads that it "could not have discovered the truth through reasonable inquiry or inspection" (*id.*, ¶ 40), and that it only "recently learned" the truth of the matter (*id.*, ¶ 14 n.1).

Because the face of the Complaint alleges that Regions concealed the alleged fraud and that Allstate did not discover it until much later, it cannot fairly be said that Allstate has effectively pleaded itself out of court with regard to the limitations defense. Whatever the merits of Regions' affirmative defense of the statute of limitations bar may be, dismissal on that basis is inappropriate under Rule 12(b)(6) because it is not apparent from the face of the Complaint that the discovery rule is inapplicable. *See, e.g., Travis v. Ziter*, 681 So.2d 1348, 1351 (Ala. 1996) ("A dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply."); *Ogle v. Hotto*, 652 N.E.2d 815, 821 (Ill. App. 5 Dist. 1995) (explaining that under Illinois law, to satisfy the discovery rule, the "pleading

---

[11] *See* Ala. Code § 6-2-3 ("In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."); 735 ILCS 5/13-215 ("If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.").

requirement is not burdensome, and great detail need not be alleged. What is required is for the pleader to allege what fact or facts support the late discovery of the injury.").[12]

---

[12] Three other observations bear mention. First, the Court recognizes that Regions has cited Alabama authorities requiring plaintiffs to plead specific facts to satisfy Rule 9(b) and avoid Rule 12(b)(6) dismissal on timeliness grounds. *See DGB, LLC v. Hinds*, 55 So.3d 218, 226 (Ala. 2010) ("This Court has held that to show that a plaintiff's claims fall within the savings clause of § 6-2-3 a complaint must allege the time and circumstances of the discovery of the cause of action. … The complaint must also allege the facts and circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury.") (citations omitted). But Regions cites no Illinois authority imposing a corresponding stringent pleading requirement. *See, e.g., Racquet v. Grant*, 741 N.E.2d 1008, 1013-14 (Ill. App. 2 Dist. 2000) (rejecting argument that pleading was required to plead date of discovery of cause of action for purposes of discovery rule); *Doyle*, 943 F. Supp.2d at 821-22 (denying Rule 12(b)(6) motion on limitations grounds, where complaint alleged dates on which plaintiffs were demoted, but did not allege when they realized demotions were unlawful, triggering limitations period, such that pleading allegations did not establish unequivocally that claims were untimely); *Commercial Ins. Co. of Newark, New Jersey v. Krain*, 843 F. Supp. 404, 407 (N.D. Ill. 1994) ("there is no special pleading requirement with respect to *statutes of limitations* in fraud cases, Rule 9(b) notwithstanding"). An Illinois statute (which may or may not apply because the parties have not addressed it) also appears to provide that a litigant may overcome a motion to dismiss on limitations grounds by presenting affidavits or other proof outside the pleadings establishing facts that obviate the defect, which Allstate has done here. *See* 735 ILCS 5/2-619(c). Again, movant has not offered any meaningful choice of law analysis, but instead posits that it does not matter which state's laws apply "because Allstate's claims are facially barred by both the Alabama and Illinois statutes." (Doc. 55, at 6 n.4.) The Court will not fill in the gaps in Regions' argument or construct a choice-of-law analysis that it has not. Without some showing from movant that Alabama (and not Illinois) law governs the question of what Allstate must do to plead the discovery rule, the Court will neither *sua sponte* perform such analysis nor assume that Alabama law is to be credited (and Illinois law is to be discarded) on this point. Second, it is a fair criticism that Allstate's Complaint could have pleaded application of the discovery rule with more particularity than it did. In its present form, Allstate's Complaint "is not likely to be considered for inclusion in a form book as a model complaint." *DGB*, 55 So.3d at 227. Nonetheless, "[f]or better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *La Grasta*, 358 F.3d at 845-46 (citation omitted); *see also Defenders of Wildlife v. Bureau of Ocean Energy Management, Regulation, and Enforcement*, 791 F. Supp.2d 1158, 1181 n.41 (S.D. Ala. 2011) (similar). "Liberal pleading rules have both their merit and their price." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 384, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (Powell, J., concurring). The proper question is not whether Allstate has pleaded all available facts that bear on its tolling argument, but whether it has pleaded enough facts that the face of the Complaint does not expose its claims as untimely. The Court answers that question in the affirmative. Third, Allstate's briefing on the Rule 12(b)(6) motion sets forth in substantial detail the facts supporting the timing and nature of information
(Continued)

In the alternative, Regions argues that even if Allstate has pleaded "that it did not discover the alleged fraud until some later date, Allstate's claims would be untimely because Allstate is charged with notice of the allegedly concealed or misrepresented facts more than five years before Allstate filed its lawsuit." (Doc. 55, at 15.) On that point, defendant posits that Allstate was on inquiry notice of the alleged fraud because (i) "Allstate had record notice that Regions had loaned only $6.5 million to MBI because Regions had recorded its mortgages securing MBI's debt in the Mobile County Probate Court" and (ii) "Allstate had notice that the Commitment Letter expired on February 29, 2008." (*Id.* at 16.)

The problem with Regions' alternative argument at the Rule 12(b)(6) stage is that it is fundamentally and inescapably fact-bound. The probate records of which Regions asks this Court to take judicial notice certainly reflect that Regions had loaned $6.5 million to MBI. (Doc. 54, Exh. 4.) As Allstate correctly points out, however, that fact, without more, does not necessarily prove that Regions had loaned <u>only</u> $6.5 million toward the project. (*See* doc. 59, at 3-4.) At the pleadings stage, the Court simply cannot assume that any reasonable investor in Allstate's position would have concluded from the probate records that $6.5 million was the sum total of Regions' financial commitment to the Saltaire development. Regions attempts to rebut this argument by suggesting that "Allstate could have simply asked one of the numerous persons or entities with whom Allstate had regular contact during the bond purchase to confirm that Regions had loaned more than the amount secured by Regions' recorded mortgages." (Doc. 63, at 14.) At this time, there are no record facts to support such a contention. The Court cannot and will not blindly accept an unpleaded "fact" that Allstate could have learned the truth by asking "one of the numerous persons or entities" how much Regions had committed, or that Allstate did not in fact make any such inquiries.[13] Allstate has expressly pleaded that it "could not have

---

that enabled it to discover the alleged fraud for the first time several years after it occurred. (*See* doc. 59, at 3-4, 7-8 & Exhs. 1-9.) To force Allstate to amend its pleading to reiterate these facts (when both sides now know when Allstate contends it discovered the alleged fraud and why it contends it discovered it at that time, such that they can plan and implement discovery accordingly) would be a hollow, inefficient directive elevating form over substance.

[13] Regions maintains, "One would be hard-pressed to find a party as sophisticated as Allstate who did less to discover the true state of things." (Doc. 55, at 13.) How is the Court to know, at the Rule 12(b)(6) stage, what Allstate did or did not do "to discover the true state of
(Continued)

discovered the truth through reasonable inquiry or inspection." (Doc. 1, ¶ 40.) For purposes of a Rule 12(b)(6) analysis, we simply do not have any other facts at this time. That is what discovery is for. In short, Regions' argument fails because it carries us far afield from the pleadings and any facts to which judicial notice might reasonably apply.

Much the same can be said for Regions' contention that the expiration of the $2 million commitment letter in February 2008 put Allstate on notice of the alleged fraud. Recall that plaintiff's theory espoused in the Complaint is that Regions issued that commitment letter with the fraudulent intent of deceiving Allstate to authorize release of the remaining $11.3 million in bond proceeds. Regions reasons that the commitment letter expired by its terms on February 29, 2008, so Allstate must have been on notice for limitations purposes by no later than that date that Regions was not going to fund that $2 million commitment. This answers the wrong question. The question for the accrual of Allstate's fraud causes of action was when it was on notice of the fraudulently concealed claims (*i.e.*, the wrongful nature of Region's act), not when it was on notice of the act itself. *See, e.g., Weaver v. Firestone*, --- So.3d ----, 2013 WL 6516389, *4 (Ala. Dec. 13, 2013) ("The language of § 6-2-3 provides that it is the discovery of the fraudulently concealed cause of action that triggers the accrual of that cause …."); *Horbach v. Kaczmarek*, 934 F. Supp. 981, 985 (N.D. Ill. 1996) (applying Illinois law, "[u]nder the discovery rule, a plaintiff has five years to file suit from the point that he knows or reasonably should know that he has been injured and that his injury was wrongfully caused") (citations and internal quotation marks omitted). That Allstate was on notice as of February 29, 2008 that Regions had not funded the $2 million commitment letter does not necessarily imply that Allstate was on notice at that time of Regions' alleged fraudulent intent in issuing the commitment letter in the first place. On its face, the commitment letter included multiple pages of contingencies, conditions precedent and circumstances under which Regions' commitment was voidable or could be otherwise excused. (Doc. 54, Exh. 2.) Regions is asking this Court to hold that Allstate should have assumed in February 2008 that none of these legitimate contractual bases for Regions to pull out of the $2 million commitment were in effect and that its underlying motivation was

---

things"? Regions would simply have the Court take its word for it, but this topic cries out for evidentiary exploration and development during the discovery process.

fraudulent.  Without some record basis to support the reasonableness of any such assumption, the Court will not hold that the mere failure of Regions to fund the $2 million commitment letter, without more, placed Allstate on inquiry notice of the alleged fraudulent scheme to deceive it into releasing bond proceeds.

Accordingly, the Court finds that this is not one of the extraordinary cases in which resolution of a defendant's affirmative defense of a limitations bar is appropriate at the Rule 12(b)(6) stage.  Allstate has not pleaded itself out of court.  Movant has not made any showing as to which state's law applies.  And the circumstances that Regions insists should have placed Allstate on notice of the alleged fraud outside the applicable limitations period are too fact-intensive to be amenable to resolution at the pleadings stage.

## IV. Conclusion.

For all of the foregoing reasons, the Court finds that Regions' Renewed Motion to Dismiss (doc. 54) is due to be, and the same hereby is, **denied**, without prejudice to Regions' ability to renew such arguments on a proper factual and legal showing via summary judgment motion.

DONE and ORDERED this 28th day of April, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE