IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 14-0067-WS-C |
| ) | |
| **REGIONS BANK,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Leave to Amend Complaint (doc. 90). The Motion has been extensively briefed and is now ripe.

I.  **Relevant Background.**

Plaintiff, Allstate Insurance Company, brought this action against defendant, Regions Bank, alleging fraudulent and deceptive conduct. The subject of the Complaint is the parties' involvement in financing a failed real estate project known as the Town of Saltaire, on the western shore of Mobile Bay in coastal Alabama. In particular, the Complaint alleges that Regions misled or tricked Allstate into authorizing the release of $11.3 million in proceeds of Saltaire infrastructure bonds that Allstate had purchased in December 2007.

At the time that Allstate purchased the bonds, the Complaint states, Allstate entered into a so-called "Side Agreement" with the developer. That Side Agreement imposed tight restrictions on the release of those bond proceeds to the Saltaire project, including most notably a requirement that the final $11.3 million would not be made available until Regions (which was depicted in the Side Agreement as controlling a $14.5 million line of credit in Saltaire's favor) reached a $16 million commitment to the project. Simply put, Allstate forbade the release of its funds (*i.e.*, the bond proceeds) until Regions had committed more than $16 million. According to the Complaint, Regions issued a "bogus" $2 million commitment letter to the developer on January 30, 2008, for the purpose of deceiving Allstate into believing that Regions had reached the requisite $16 million funding level and green-lighting release of the $11.3 million in bond

proceeds. The Complaint alleges that Regions' scheme worked to perfection: Allstate released the bond proceeds, Regions never funded the $2 million commitment letter or otherwise came close to a $16 million commitment to the project, Regions ultimately walked away, Saltaire failed, and Allstate lost millions of dollars. Based on those allegations, Allstate asserts state-law claims against Regions on theories of fraudulent representation, negligent misrepresentation, and fraudulent concealment/suppression.

This case was originally filed in the U.S. District Court for the Northern District of Illinois on July 18, 2013; however, venue was transferred to this District Court pursuant to the discretionary transfer provisions of 28 U.S.C. § 1404(a) some seven months later on Regions' motion. On April 22, 2014, Magistrate Judge Cassady entered a Rule 16(b) Scheduling Order (doc. 69), providing in relevant part as follows: "Motions for leave to amend the pleadings and to join other parties must be filed not later than **June 20, 2014**." (Doc. 69, at 5 ¶ 4.)[1] The Scheduling Order also fixed a November 3, 2014 discovery cutoff date and a May 2015 trial setting.

On July 11, 2014, exactly three weeks after the Scheduling Order deadline for motions to amend pleadings or join additional parties, Allstate filed a Motion for Leave to Amend the Complaint. The stated objective of the proposed amendment is to name George Jones as an additional party defendant, with allegations that "Jones and Regions … conspired to trigger the release of all the bond proceeds through a fraudulent scheme." (Doc. 94-1, ¶ 20.) Allstate thus proposes naming Jones as an additional defendant for the existing claims of fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment/suppression, and adding a new claim against Jones and Regions for civil conspiracy. Regions opposes the amendment on a host of grounds recited in a 25-page memorandum of law.

---

[1] That deadline did not diverge materially from the parties' proposals. Although the Report of Parties' Planning Meeting (doc. 60) reflected that Allstate and Regions failed to reach agreement on a proposed deadline for motions to amend pleadings, Allstate requested a setting of June 16, 2014 (some four days earlier than that imposed by Judge Cassady), while Regions requested it be set for 60 days after ruling on its motion to dismiss (which ruling occurred on April 28, 2014, thus equating to a proposed deadline of June 26, 2014, or six days after that imposed by Judge Cassady). The point is that the Scheduling Order deadline for motions to amend pleadings was in line with the professed wishes of both parties.

II.   Analysis.

   A.   *Governing Legal Standard.*

Ordinarily, motions to amend pleadings are subject to a permissive, liberal standard, pursuant to which "the court should freely give leave when justice so requires." Rule 15(a)(2), Fed.R.Civ.P.; *see also Bowers v. U.S. Parole Com'n, Warden*, --- F.3d ----, 2014 WL 3339497, *5 (11th Cir. July 9, 2014) ("District courts have limited discretion in denying leave to amend, and should grant a motion to amend unless there are substantial reasons to deny it.") (citation and internal marks omitted). However, the relaxed Rule 15(a)(2) standard must yield to a more stringent analysis where, as here, the applicable deadline for amending pleadings expired before the motion was filed. In that scenario, "[a] plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed.R.Civ.P. 16(b)." *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009); *see also Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a).").[2] Pursuant to that rule, "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4), Fed.R.Civ.P.

Allstate filed its Motion for Leave to Amend Complaint on July 11, 2014, some 21 days after the applicable Scheduling Order deadline had lapsed. Accordingly, the Court's evaluation of Allstate's Motion is informed in the first instance by Rule 16(b) "good cause" principles. If Allstate has made an adequate showing of good cause for modification of the Scheduling Order

---

[2] The rationale for treating motions to amend pleadings differently after a scheduling order deadline has passed than prior to such a deadline is unassailable. Indeed, the Eleventh Circuit has opined that "[i]f we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419. "[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded … Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 2395194, *1 n.3 (S.D. Ala. June 22, 2012) (citation omitted); *see also Baker v. U.S. Marshal Service*, 2014 WL 2534927, *2 (D.N.J. June 5, 2014) ("Extensions of time without good cause would deprive courts of the ability to effectively manage cases on their overcrowded dockets and would severely impair the utility of Scheduling Orders.").

to allow its untimely request for amendment, then the Court will turn its attention to the Rule 15(a) inquiry of whether the interests of justice favor allowing such an amendment.

### B. Rule 16(b)(4) "Good Cause" Analysis.

The "good cause" standard prescribed by Rule 16(b) "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted).[3] "This rule is strictly enforced, particularly where, as here, the nonmovant has objected to the proposed amendment as untimely under the applicable scheduling order." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 4870839, *1 (S.D. Ala. Sept. 12, 2013). The burden of establishing the requisite good cause / diligence rests on Allstate, the party seeking relief from the Scheduling Order. *See, e.g., Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3rd Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence.").[4]

### 1. Plaintiff's Showing of Diligence.

To make the necessary showing of diligence, Allstate explains that it "just recently discovered evidence demonstrating that Regions … conspired with George Jones … to defraud

---

[3] *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."); *Jackson v. Odenat*, --- F. Supp.2d ----, 2014 WL 1202745, *6 (S.D.N.Y. Mar. 24, 2014) ("[t]he touchstone of good cause is the moving party's diligence"); *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672-73 (S.D. Fla. 2012) ("diligence is the key to satisfying the good cause requirement"); *Southern Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp.2d 509, 521 (D. Del. 2010) ("the good cause standard under Rule 16(b) hinges on diligence of the movant") (citation omitted).

[4] *See also Pittman ex rel. Sykes v. Franklin*, 2008 WL 2521222, *6 n.5 (6th Cir. June 24, 2008) (recognizing movant's "obligation to demonstrate 'good cause' for failing to comply with the district court's scheduling order"); *Benchmark Young Adult School, Inc. v. Launchworks Life Services, LLC*, 2014 WL 3014720, *2 (S.D. Cal. July 3, 2014) ("The party seeking to continue or extend the deadlines bears the burden of proving good cause."); *Baker*, 2014 WL 2534927, at *2 ("The moving party has the burden of demonstrating that despite its diligence it could not reasonably have met the Scheduling Order deadline."); *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 2014 WL 1431720, *1 (M.D.N.C. Apr. 14, 2014) ("Appropriately, the burden to justify a departure from the rules set forth in the Court's scheduling order is on the moving party.") (citations and internal marks omitted); *Quinn v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 977632, *4 (S.D. Ala. Mar. 12, 2014) (addressing movant's "attempt to meet his burden under Rule 16(b)(4)").

Allstate" into releasing the bond proceeds. (Doc. 90, at 1.) In particular, Allstate relies heavily on an e-mail message (the "January 29 E-Mail") that Regions produced to it in discovery on June 26, 2014, six days after the Scheduling Order deadline for motions to amend pleadings. That message, dated January 29, 2008, was transmitted by George Jones (a senior representative of the Saltaire project developer) to John Arendall (a representative of defendant Regions). Upon receipt of the January 29 E-Mail, Allstate took prompt action by filing its Motion for Leave to Amend Complaint approximately two weeks later.

In relevant part, the contents of the January 29 E-Mail from Jones to Arendall were as follows:

> "To brief you on the plan: I told All State I was after a $2mm to $3mm increase n the Regions line, which would boost the total commitment from Regions to $16mm +. That is the measure of the caviat in the bond funding. Therefore, I believe if you simply give us a letter stating you are increasing our line by X$, or something to that affect we can get those $ unleashed? If you are at $9.5mm + MCS then you are effectivly at or over the $ 16mm threshold – you would not have to fund until we get everything else done but, in truth, you have agreed to increase our line and we are over the mark. With the AID released we have sufficient time to put everything else together."

(Doc. 90, Exh. 1 (typos in original).) In furtherance of this "plan," Arendall (acting for Regions) issued the purportedly "bogus" $2 million commitment letter the very next day, after which Allstate released the bond proceeds. (*Id.*, Exh. 2.)

Allstate contends that the January 29 E-Mail is evidence that Jones was conspiring with Regions / Arendall to deceive Allstate about Regions' commitment to the Saltaire development. The object of the conspiracy, Allstate posits, was to induce Allstate to authorize the release of $11.3 million in bond proceeds based on the false premise that Regions had committed $16 million to the project, including the January 30 commitment letter, which Allstate says was nothing more than a "hoax." Accordingly, on the basis of the January 29 E-Mail, Allstate proposes to amend its Complaint to name Jones as an additional party defendant for the existing claims of fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment/suppression; and to add a new claim against both defendants for civil conspiracy.

It cannot reasonably be disputed that newly discovered evidence can supply the necessary good cause under Rule 16(b)(4) to enlarge an expired deadline for amending pleadings. *See, e.g., United States v. Godwin*, 247 F.R.D. 503, 506 (E.D.N.C. 2007) ("[g]ood cause under Rule 16(b) exists when evidence supporting the proposed amendment would not have been discovered

in the exercise of reasonable diligence until after the amendment deadline had passed") (citation omitted).[5] On its face, Allstate's showing of the delayed production of the January 29 E-Mail (despite reasonably prompt and thorough discovery requests on its part) and the allegedly new information contained in that document appears adequate to satisfy the requirements of Rule 16(b)(4) for modification of the Scheduling Order.

### 2. *Defendant's Counterarguments.*

In its opposition brief, Regions challenges the sufficiency of Allstate's good cause showing on multiple grounds. Specifically, defendant objects that (i) Allstate knew the substance of the January 29 E-Mail for years before this lawsuit commenced; (ii) Allstate was not diligent in pursuing discovery concerning Jones; and (iii) Allstate's proposed amendments to the Complaint extend beyond the scope of the purportedly new evidence. Each category of argument will be considered in turn.

First, Regions insists that modification of the Scheduling Order under Rule 16(b)(4) is unwarranted here because "Allstate's own filings in this case show that Allstate has long known everything it now claims it did not." (Doc. 97, at 3.) As a threshold matter, it is correct that the requisite "good cause" for untimely amendment of pleadings is lacking if the movant knew or

---

[5] *See also Soroof Trading Development Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) ("Because the facts alleged in the original complaint would not make out [the new claim], the additional facts included in the proposed second amended complaint are necessary to Soroof's claim. As Soroof did not know and could not reasonably have known this information before the … deadline for amendments, it has demonstrated good cause for its failure to meet that deadline."); *Bowers v. American Heart Ass'n, Inc.*, 513 F. Supp.2d 1364, 1368 (N.D. Ga. 2007) (plaintiff showed good cause for untimely amendment of complaint where plaintiff had learned new information on which amendment was based at deposition eight days prior to moving for leave to amend); *Ciena Corp. v. Nortel Networks Inc.*, 233 F.R.D. 493, 495 (E.D. Tex. 2006) (finding good cause for untimely amendment of pleading where movant uncovered significant additional evidence after amendment deadline, and where it had been diligent in investigating its claims); *In re "Agent Orange" Product Liability Litigation*, 220 F.R.D. 22, 25 (E.D.N.Y. 2004) ("When, however, parties have discovered new facts and a basis for new allegations during discovery, delay is routinely justified."); *Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 509 (D. Kan. 1998) (concluding that good cause existed where, despite timely discovery requests, plaintiff "did not have knowledge of the factual basis for its new fraud claims until after" scheduling order deadline); *Kodak Graphic Communications Canada Co. v. E.I. du Pont de Nemours and Co.*, 2011 WL 4711968, *5 (W.D.N.Y. Sept. 23, 2011) ("The moving party may demonstrate 'good cause' by moving to amend promptly after the discovery of new evidence following the scheduling deadline.").

should have known the relevant facts prior to the deadline.  *See, e.g., Kendall v. Thaxton Road LLC*, 2011 WL 3903400, *5 (11th Cir. Sept. 7, 2011) (no Rule 16(b)(4) good cause where "the facts with which Kendall wished to amend his complaint were known to Kendall at the time he filed his initial complaint").[6]  The critical question, then, is whether Allstate knew the substance of the January 29 E-Mail prior to the relevant Scheduling Order deadline for amending the pleadings.

Regions' position is that the January 29 E-Mail does not qualify as newly discovered evidence because it reiterated what Allstate already knew, including (a) that Jones had informed Allstate of the developer's efforts to obtain additional commitments from Regions, and (b) that Jones had communicated with Arendall (the Regions representative) about Regions increasing its commitment.  (Doc. 97, at 12-15.)  But those facts are not the animating force of the proposed amendment.  According to Allstate, the significance of the January 29 E-Mail, and the reason why it prompted the Motion for Leave to Amend Complaint, is that it was "the first and only instance of evidence establishing that Jones, like Arendall, knew and intended the $2 million commitment letter to be a hoax."  (Doc. 100, at 2.)  That document, in Allstate's view, marked the first time plaintiff had received sufficient evidence of Jones' participation in the alleged fraudulent conduct to name him as a defendant and co-conspirator.  Solely for purposes of Rule 16(b)(4) review, and without making any final determinations as to the evidentiary value (if any) of the January 29 E-Mail, the Court finds that Allstate has made an adequate showing that the

---

[6] *See also Ross v. American Red Cross*, 2014 WL 289430, *8 (6th Cir. Jan. 27, 2014) ("A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline."); *Soroof Trading*, 283 F.R.D. at 147 ("if the proposed amendment relies on information that the party knew or should have known prior to the deadline, leave to amend is properly denied"); *In re Acceptance Ins. Cos., Inc., Securities Litigation*, 352 F. Supp.2d 928, 933 (D. Neb. 2003) ("when a motion to amend a complaint is based on allegedly new information that the plaintiff knew, or through the exercise of reasonable effort could have known at an earlier time, the motion should be denied"); *Korrow v. Aaron's, Inc.*, --- F.R.D. ----, 2014 WL 3040802, *11 (D.N.J. June 30, 2014) ("Defendant bears the burden of showing good cause under Rule 16 to persuade the Court that, despite its diligent efforts, it was unable to know until long after … its deadline for seeking leave to amend its pleading, that it had a counterclaim against Korrow").

January 29 E-Mail constituted newly discovered evidence and was not simply cumulative of what Allstate already knew.[7]

Second, Regions impugns Allstate's showing of diligence by arguing that Allstate could or should have taken further action to obtain the January 29 E-Mail sooner than it did. Applicable law confirms that this is a proper consideration in the Rule 16(b)(4) inquiry. *See Southern Grouts*, 575 F.3d at 1241 n.3 ("That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order."). Nonetheless, Regions' criticism of Allstate in this regard is not warranted by the facts. Allstate represents (without objection by Regions) that, on April 15, 2014, it served discovery requests on Regions calling for all communications between Regions/Arendall and Jones. (Doc. 90, at 3.) The January 29 E-Mail was apparently transmitted to Arendall at his "Regions.com" e-mail address; therefore, it should have been located in Regions' files and should have been well within the ambit of Allstate's April 2014 document request (two months before the deadline for amending pleadings). For whatever reason, Regions did not produce that document in its discovery responses of May 22, 2014.[8] Indeed, Allstate did not receive the January 29 E-Mail in discovery

---

[7] Based on the aggressive tone of both sides' briefs on this point, the Court anticipates that there will be further arguments made and ink spilled about the proper construction and interpretation of the January 29 E-Mail before all is said and done. Within the narrow context of Allstate's Rule 16(b)(4) burden, however, that does not matter. What does matter is that the January 29 E-Mail includes language that might rationally support an argument that Jones was proposing a "plan" involving the issuance of a fraudulent commitment letter (*i.e.,* the statement in the e-mail that "you would not have to fund" the letter "until we get everything else done"). Nothing in the other documents identified by Regions as having been available to and/or known by Allstate previously would appear amenable to such an interpretation. (To be sure, Regions' documents show that Allstate already knew that Jones had sought additional funding from Regions, had been involved in creation of the Side Agreement, and had forwarded the commitment letter to Allstate. But again, Allstate says the value of the January 29 E-Mail lies not in those aspects, but in establishing Jones' awareness and intent that the commitment letter would be fraudulent, which is not demonstrated in the previously available documents identified by Regions.) In other words, the January 29 E-Mail was new evidence. It introduced a factual wrinkle that was not known to Allstate previously. And the Federal Rules of Civil Procedure are not so regimented and restrictive that they forbid Allstate from amending its pleading based on that new information, so long as it had worked with reasonable diligence during the discovery and investigative processes to obtain same at an earlier time.

[8] To be clear, the Court is not suggesting that any party behaved improperly with regard to discovery, much less that Regions' failure to produce the January 29 E-Mail to Allstate (Continued)

responses from Regions until June 26, 2014, after the relevant deadline had already expired. What's more, Allstate shows that it had already taken multiple other steps reasonably calculated to obtain any documents showing communications between Jones and Regions / Arendall. Specifically, Allstate contacted Jones back in August 2013 to discuss this matter. He declined to provide any voluntary cooperation to Allstate. (Doc. 100, at 10 & Exh. D.)[9] And, in previous litigation with Regions, Allstate's counsel had subpoenaed Jones' then-employer – the project developer, Saltaire Development Group ("SDG") – to obtain "all of Jones' communications concerning the project." (Doc. 100, at 10.) The January 29 E-Mail was omitted from that document production, as well.[10]

Taken in the aggregate, then, Allstate's showing is that all of SDG's records of project-related communications by Jones had been subpoenaed and made available to Allstate before this litigation ever commenced. Allstate had properly issued document requests to Regions for all communications between Regions / Arendall and Jones well before the Scheduling Order

---

in its May 2014 document production was the product of chicanery or a nefarious motive. Why the document was not produced in May 2014 is irrelevant to the Rule 16(b)(4) inquiry. What is relevant is that Allstate interposed a proper, timely discovery request to Regions that was reasonably calculated to yield the January 29 E-Mail in document production prior to the Scheduling Order deadline for amending pleadings. That fact is strongly indicative of reasonable diligence by Allstate, and therefore lends support to plaintiff's "good cause" showing for modifying the Scheduling Order after the fact.

[9] On that point, plaintiff's evidence is that Jones sent an e-mail to Allstate's counsel on August 29, 2013, stating "I just don't see any way I can accommodate your wishes," inasmuch as "I have no business interests in Mobile and therefore do not travel there anymore." (Doc. 100, Exh. D.) Although it was certainly Jones' prerogative to decline to provide information or documentation to Allstate absent a subpoena, he evidently took the opposite approach with Regions and voluntarily aided that party in building its defense.

[10] Once again, the Court ascribes no blame and passes no judgment on any person or entity for the non-production of the January 29 E-Mail by SDG in the previous litigation. The fact remains, however, that the January 29 E-Mail appears to have been transmitted by Jones via his "saltairedevelopment.com" e-mail address, such that it should have been covered by document requests by Allstate's lawyers directed at SDG for copies of all communications by Jones concerning the project. For whatever reason, SDG did not produce it. By all appearances, then, despite reasonable inquiry Allstate had no information and no reason to believe the January 29 E-Mail even existed when the Scheduling Order deadline for motions to amend pleadings passed.

deadline for amending pleadings. And it had reached out to Jones informally seeking his cooperation on the matter. None of these reasonable steps resulted in disclosure of the January 29 E-Mail to Allstate prior to the applicable deadline for motions to amend pleadings. The ensuing delay is unfortunate, but it cannot fairly be attributed to dilatoriness or inaction on Allstate's part. Plaintiff took multiple steps reasonably calculated to obtain production of the January 29 E-Mail, including discovery requests propounded to both the sending entity and the receiving entity. In light of these facts, the Court cannot accept Regions' characterization that Allstate's Motion for Leave to Amend Complaint is meritless because "[n]either Regions nor Jones should be punished for Allstate's lack of diligence." (Doc. 97, at 8.)[11] Rule 16(b)(4) requires diligence by the movant, but does not impose a "leave-no-stone-unturned" prerequisite for relief.

Third, Regions urges the Court to disqualify portions of Allstate's proposed Amended Complaint as being unrelated to the newly discovered evidence. (Doc. 97, at 23-25.) Defendant

---

[11] Additionally, the Court neither credits nor endorses Regions' cavalier suggestion that "if Allstate wanted discovery from SDG or Jones, it could have simply named SDG or Jones as a defendant in the initial complaint and propounded requests for production to them." (Doc. 97, at 8.) At a minimum, such a shoot-first-ask-questions-later approach would have imperiled Allstate and its attorneys, given the heightened pleading requirements of Rule 9(b), the certification requirements of Rule 11(b), and Allstate's admission that it lacked any evidence that Jones "knew and intended the $2 million commitment letter to be a hoax" (doc. 100, at 2) until late June 2014. Reasonable diligence for Rule 16(b)(4) purposes did not obligate Allstate to name Jones as a defendant at the outset of the case based on a speculative hunch as a means of extracting corroborative discovery material from him, with exposure to sanctions if said hunch did not pan out. The Court will not construe the Federal Rules of Civil Procedure to encourage (much less require) reckless proliferation of litigation by uninformed plaintiffs as a way to gather facts. As for Regions' alternative rebuke that "Allstate could have issued a non-party subpoena to Jones at the outset of discovery" (doc. 97, at 8), Regions is correct. Allstate could have done that. But the test under Rule 16(b)(4) is not whether the movant exhausted every conceivable avenue to obtain the new information prior to the applicable Scheduling Order deadline; rather, the pertinent inquiry is whether the party undertook reasonable effort to do so. Surely, Allstate's activities were reasonably calculated to obtain the January 29 E-Mail. Its attorneys had previously subpoenaed from SDG (the entity from whose e-mail server the subject message purportedly originated) all communications from Jones concerning the project. And it had timely submitted a document production request to Regions (the entity to whose e-mail server the subject message purportedly was sent) requesting all communications with Jones concerning the project. That those discovery efforts did not bear fruit until after the June 20, 2014 deadline for motions to amend pleadings does not equate to a lack of diligence on Allstate's part. Regions' argument to the contrary is unpersuasive.

identifies two offending amendments. In the misrepresentation claims, Allstate changed the verbiage that Regions falsely represented "that it was obligated to lend an additional $2 million" from the original Complaint to language that defendants falsely represented "that Regions had committed to lend an additional $2 million" in the proposed Amended Complaint. (*Compare* doc. 1, ¶¶ 23, 29 *with* doc. 94-1, ¶¶ 27, 33.) Regions likewise points out that in the concealment claim, Allstate's proposed Amended Complaint altered the original Complaint's wording that "Regions was aware that Allstate mistakenly believed" it had provided $14.5 million in funding, to read instead that "Defendants were aware that Allstate was relying on representations" that Regions had provided such funding. (*Compare* doc. 1, ¶ 36 *with* doc. 94-1, ¶ 40.) Plaintiff responds by waving off Regions' objection, characterizing these modifications to its pleading as non-substantive, and reasoning that there is "no meaningful distinction" between its word choices, which were adjusted in the interests of "precision and clarity." (Doc. 100, at 14-15.)

The Court has no reason to doubt the purity of Allstate's motives. Plaintiff is right that it hardly seems to matter whether the phrase "committed to lend" or "obligated to lend" is used to characterize Regions' status, and it is difficult to imagine how such trivial modifications could make a dime's worth of difference on summary judgment (as Regions argues). But defendant's fundamental point remains, to-wit: Allstate cannot amend its pleading after the Scheduling Order deadline except insofar as it demonstrates good cause (*i.e.*, diligence) for the delay. Had Allstate wished to tinker with the language of Counts One, Two and Three to promote the interests of precision and clarity without adjusting their substance, it was obligated to act diligently to do so prior to the Scheduling Order deadline. These edits have nothing to do with, and are not informed by, the January 29 E-Mail, so they are not based on newly discovered evidence. Plaintiff has made no showing why it could not have made these amendments prior to the deadline; therefore, it has not established the necessary diligence to excuse its non-compliance with the Scheduling Order on this point. Under a strict reading of Rule 16(b)(4), plaintiff's proposed edits to its claims that do not reflect new information gleaned from the January 29 E-Mail are untimely and impermissible.[12]

---

[12] Allstate appears to be operating under the assumption that there is some kind of *de minimis* exception to the proscriptions of Rule 16(b)(4) against untimely amendments to pleadings, such that untimely amendments are okay as long as they are modest or unimportant. The Court is aware of no such exception, and plaintiff cites no authority for the proposition that a
(Continued)

In sum, then, Allstate has established the requisite good cause for adding George Jones as a party defendant, naming him as an additional defendant in the existing claims for fraudulent / negligent misrepresentation and fraudulent concealment / suppression, and adding a new claim against Jones and Regions for conspiracy. Rule 16(b)(4) thus poses no impediment to those proposed amendments to the Complaint, even though such changes would otherwise be untimely under the terms of the Rule 16(b) Scheduling Order. Insofar, however, as Allstate seeks to make other, unrelated modifications to its pleading based on editorial considerations such as clarity and precision, those proposed amendments are not supported by good cause, and are therefore barred as untimely under the provisions of Rule 16(b)(4).

### C.     *Rule 15(a)(2) Interests-of-Justice Analysis.*

Although Allstate has satisfied the "good cause" standard for untimely amendment of its pleading pursuant to Rule 16(b)(4), that determination does not conclude the inquiry. Rather, plaintiff's Motion for Leave to Amend must also be evaluated under traditional Rule 15 principles. *See Sosa*, 133 F.3d at 1419 (explaining that both Rule 16(b) and Rule 15(a) must be satisfied before a litigant may amend its pleading after scheduling order deadline). Pursuant to Rule 15(a), "[a]lthough leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013) (citation omitted); *see also Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) ("Leave may be denied because of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.") (citation and internal quotation marks omitted). "Rule 15(a) gives a district court 'extensive discretion' to decide whether or not to allow a party to amend a complaint." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (citation omitted).

---

plaintiff who has established good cause for certain amendments to its pleading is thereby authorized to make such other changes as it sees fit, so long as those modifications are non-substantive, minor, or offered for purposes of precision and clarity. The principle of "no harm, no foul" may be sensible, but Rule 16(b)(4) simply does not allow any amendment of a pleading outside the court-prescribed deadlines without a showing of good cause.

Regions contends that Allstate's amendment flunks Rule 15(a) review on grounds of bad faith, prejudice and futility. The bad faith objection hinges on Regions' position that "Allstate cannot advance a legitimate reason for its delay in seeking amendment of its claims." (Doc. 97, at 18.) As discussed in detail *supra*, however, Allstate has indeed articulated a *bona fide* good-faith explanation or the timing of its Motion for Leave to Amend. This argument is essentially a reprise of Regions' failed Rule 16(b)(4) argument. It fares no better in the Rule 15(a) context.[13]

Next, Regions invokes prejudice, complaining that joinder of Jones as a defendant at this juncture will unduly delay these proceedings and subject Regions to unspecified "additional expense." The burden lies with Regions, as the party opposing amendment, to show that it would suffer undue prejudice if Allstate were allowed to amend its Complaint at this time. *See, e.g., Uzoukwu v. Metropolitan Washington Council of Governments*, 983 F. Supp.2d 67, 83 (D.D.C. 2013) ("The non-movant generally carries the burden of persuading the court to deny the [Rule 15(a)] motion."); *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp.2d 329, 332 (E.D. Pa. 2003) ("The burden of showing undue prejudice rests with the party opposing amendment."). To satisfy its burden of showing undue prejudice, Regions must "demonstrate that its ability to present its case would be seriously impaired were the amendment allowed." *Air Products*, 256 F. Supp.2d at 332 (citation omitted).[14] It is well-settled that "[a]llegations that an amendment will require the expenditure of some additional time, effort, or

---

[13] To be sure, Regions theorizes that Allstate's motivation in adding Jones as a defendant is simply "to minimize the impact of Jones's testimony." (Doc. 97, at 19.) However, there is no evidence to support such a theory. All indications before this Court are that Allstate filed its Motion for Leave to Amend without knowing the contents or substance of the declaration that Jones supplied to Regions. Why would Allstate join a brand-new defendant to neutralize a declaration it had never even seen? Moreover, it is not obvious why Regions thinks a party's testimony would necessarily be rendered less impactful than that of a non-party. In other words, it does not appear that Allstate's mere act of joining Jones as an additional defendant will have any deleterious effect on the credibility or evidentiary significance of Jones' testimony as a witness at trial, thereby undermining Regions' bad-faith argument.

[14] *See also Midcities Metropolitan District No. 1 v. U.S. Bank National Association*, --- F. Supp.2d ----, 2014 WL 1977197, *4 (D. Colo. May 15, 2014) ("Under Fed.R.Civ.P. 15(a), undue prejudice means undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the plaintiff."); *Shea v. Clinton*, 288 F.R.D. 1, 7 (D.D.C. 2012) ("To show prejudice, the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding.").

money do not constitute undue prejudice." *Scott v. Chipotle Mexican Grill, Inc.*, --- F.R.D. ----, 2014 WL 2975346, *6 (S.D.N.Y. July 2, 2014) (citation omitted).[15]

To demonstrate undue prejudice, Regions trades in vague, conclusory comments such as "the scope of the lawsuit will be enlarged," "the parties' current discovery may be put on hold," and discovery by Jones will "caus[e] additional expense and delay." (Doc. 97, at 19-20.) Such allegations fall well short of showing (a) that this action will likely be substantially delayed if the amendment is allowed;[16] (b) that Regions will be forced to incur significant expense, over and above what it would have faced had Jones been named as a defendant at the inception of this lawsuit; or (c) that Regions' ability to present its case or defend itself would be unfairly trammeled if the amendment were permitted. In short, Regions has failed to show that any prejudice it may suffer will be <u>undue</u>, as opposed to the sort of inherent, run-of-the-mill prejudice occurring whenever a Rule 15 motion is granted.

Third, Regions urges the court to reject the proposed amendment on futility grounds. In that regard, defendant reasons that "Allstate's purported claims against Jones are barred by the statue of limitations, and, therefore, Allstate's proposed amendment is futile." (Doc. 97, at 21.)

---

[15] *See also United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, --- F.R.D. ----, 2013 WL 6841747, *4 (D.D.C. Dec. 30, 2013) ("an amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources" because "[a]ny amendment will require some expenditure of resources on the part of the non-moving party"); *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 228 (E.D. Pa. 2012) ("the need for additional discovery due to amendment does not, without more, prejudice the non-moving party").

[16] In that regard, it bears noting that Regions has not historically displayed urgency to bring this matter to trial in expeditious fashion. For example, the motion for discretionary § 1404(a) transfer that Regions filed back in September 2013 while this action was still pending in the Northern District of Illinois effectively set this case back by five months. Then, shortly after the case reached this District Court, Regions moved to stay discovery. To be sure, there was nothing improper about such motions; however, they are not easily reconciled with Regions' present allegations that it will suffer undue prejudice for even a minor delay in adjudication of this action that may flow from allowing Allstate's amendment. More fundamentally, it is not a foregone conclusion that the amendment will delay these proceedings at all. The operative discovery cutoff is nearly three months away. The trial setting is May 2015, nine months from now. It is difficult to imagine how allowing Allstate to add Jones as a defendant now will in any way jeopardize that trial setting. Accordingly, Regions has not shown that any delay is likely to result from the amendment, much less the sort of significant delay that might unduly prejudice Regions or force it to incur substantial additional expense.

Without question, leave to amend under Rule 15(a) may be denied where the proposed amendment is futile. *See Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile"). To be properly rejected on futility grounds, a proposed amendment must be so lacking in merit that the complaint as amended "would necessarily fail." *Florida Evergreen Foliage v. E.I DuPont De Nemours and Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006) (citation omitted); *see also Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

The Court cannot definitively conclude at this time that Allstate's proposed claims against Jones "would necessarily fail" on statute of limitations grounds. Regions' efforts to dismiss plaintiff's claims against it as time-barred via Rule 12(b)(6) motion were not successful. (*See* doc. 71, at 10-16.) Moreover, a critical facet of Allstate's proposed claims against Jones is that Jones "concealed from Allstate that Regions had no intention of funding the $2 million commitment letter." (Doc. 94-1, ¶ 42.) As discussed at length *supra*, Allstate has made a showing that the first time it discovered Jones' involvement in such alleged concealment was when it received the January 29 E-Mail in discovery, just a few weeks ago. That factual allegation may or may not have important repercussions for any limitations defense that Jones may advance. On this partial, incomplete record, with only barebones arguments from the parties as to limitations issues pertinent to Jones, the Court cannot conclude that the proposed amendment will necessarily fail or that plaintiff's proposed claims against Jones are time-barred on their face.

In short, defendant's opposition to plaintiff's proposed amended pleading on grounds of bad faith / improper purpose, undue prejudice and futility is inadequate to overcome the liberal amendment policy embodied in Rule 15(a)(2). Regions having identified no substantial reason to deny leave to amend under Rule 15, Allstate's Motion should be granted. *See Bowers*, 2014 WL 3339497, at *5 (district courts should grant a Rule 15(a) motion "unless there are substantial reasons to deny it"). On that basis, the Court concludes that the interests of justice favor allowing Allstate to amend its Complaint at this time, and that the proposed amendment passes muster under a liberal Rule 15(a)(2) analysis.

**III.    Conclusion.**

For all of the foregoing reasons, Allstate Insurance Company's Motion for Leave to Amend Complaint (doc. 90) is **granted in part**, and **denied in part**.  The Motion is **denied** insofar as plaintiff's proposed amendment would revise the pleading for purposes of clarity or precision by making edits unrelated to newly discovered evidence.  Thus, the amendment is **disallowed** with respect to plaintiff's change of verbiage from "obligated to lend" to "committed to lend" in Paragraphs 27 and 33 of the Proposed First Amended Complaint, and the terminology change from "mistakenly believed" to "was relying on representations" in Paragraph 40 of the Proposed First Amended Complaint.  In all other respects, the Motion for Leave to Amend Complaint is **granted**.  Plaintiff is **ordered** to file a corrected First Amended Complaint as a freestanding pleading by no later than **August 22, 2014**, and to act promptly to complete service of process on defendant George Jones so as to avoid unnecessary delays in the prosecution of this litigation.

DONE and ORDERED this 19th day of August, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE